UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL DURAN,          )
        Plaintiff,      )
    v.             )      Miscellaneous No. 09-730 (HHK/AK)
               )
CHRISTOPHER ANDREW,   )
        Defendant.   )
_____)

**MEMORANDUM OPINION**

Pending before this Court is Non-Party [Petitioner] Alex Menendez's Motion to Quash

Subpoena ("Motion to Quash") [1]; Defendant's opposition to the Motion ("Opposition") [4];

and Non-Party's reply to the Opposition ("Reply") [5]. This matter is pending in this Court only

for determination of the instant Motion to Quash; the underlying civil action, captioned *Duran v.

Andrew*, 08-cv-1400-JCH, is pending in the United States District Court for the Eastern District

of Missouri. In that action, Plaintiff Daniel Duran ("Duran") seeks injunctive relief and

monetary damages from Defendant Christopher Andrew ("Andrew") for alleged defamation

and injurious falsehood. In the Motion to Quash, Non-Party Alex Menendez ("Menendez")

moves to quash a subpoena *ad testificandum* and *duces tecum* issued by Andrew. Menendez

is a partner in the law firm of McLeod, Watkinson & Miller ("MWM"), the firm which

represents Non-Party U.S. Soybean Export Council ("USSEC"), the former employer of

both the Plaintiff and Defendant.[1] Upon consideration of the Motion, the Memorandum in

---

[1]MWM does not represent Duran or Andrew in the underlying civil action and USSEC is not a party in that action. USSEC is however a party in a Turkish proceeding filed by Andrew alleging that USSEC failed to comply with Turkish law regarding Andrew's termination of employment. (Motion at 7 n.3.)

support thereof, the Opposition thereto and the record in this case, for the reasons set forth

below, Plaintiff's Motion is denied in part and granted in part.  An appropriate Order

accompanies this Memorandum Opinion.

## I. Background

The subpoena at issue in this Motion directs  Menendez to appear for a deposition and to

bring the following documents:

> For the period June 1, 2008 through March 3, 2009, all documents concerning allegations
> of wrongdoing made against Daniel Duran by any person or entity, including, but not
> limited to: (a) all handwritten, electronic and/or typewritten notes of interviews and /or
> communications between yourself, and Tom Nishio, Christopher Andrew, Masako
> Tateishi, Daniel Duran, Akira Ogawa, Mark Pietz, Miguel Escobar and/or Rick Ostlie; (b)
> any other documents reflecting, in any way, on the truth or falsity of allegations of
> wrongdoing made against Daniel Duran

 (Subpoena attached as Motion to Quash, Exh. A.)

The underlying civil action pending in the United States District Court for the Eastern

District of Missouri involves defamation claims by Duran against Andrew relating to statements

made by Andrew that malign Plaintiff's "competencies and conduct." (Complaint ¶8, attached to

Andrew Declaration at Exhibit R.)  In his Opposition to the Motion to Quash, Andrew notes that

"[t]he allegedly defamatory statements  . . . arise from many of the same operative facts which

were allegedly investigated by MWM between June and July of 2008, namely, . . . that Duran

carried on an inappropriate relationship with a member of [Tom] Nishio's staff, [Duran's]

issuance of no-bid contracts and a knife assault by Duran against an unarmed individual in

Branson, Missouri."  (Opposition at 3.)[2]  )

---

[2]Tom Nishio is a former employee of USSEC, who served as Japan Country Director.  He
was previously named as a co-Defendant in Duran's lawsuit against Andrew but was voluntarily
dismissed after Plaintiff failed to timely serve him.  (Opposition at 3 n* and 5.)

As a preliminary matter, this Court notes that any ruling directing that the Menendez deposition shall proceed and/or that documents shall be produced does not dictate whether the information obtained from Menendez by Andrews will be admissible at trial; that is an issue left for the trial court to determine.

## II. Legal Standard

Federal Rule of Civil Procedure 45 provides for the issuance of a subpoena "command[ing] each person to whom it is directed to . . . attend and testify; produce documents, electronically stored information, or tangible things in that person's possession, custody or control. . ." Fed. R. Civ. P. 45(a)(1)(A)(iii). On timely motion, the court which issued the subpoena may quash or modify such subpoena, if the subpoena "requires disclosure of privileged or protected matter, if no exception or waiver applies; . . . ." Fed. R. Civ. P. 45(c)(3)(A)(iii).

The attorney-client privilege "protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In Re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998) (citation omitted). The privilege extends to confidential communications rather than facts. *Upjohn Co. v United States*, 449 U.S. 383, 395-96 (1981). Accordingly, not every communication with an attorney is necessarily privileged. Such communication must be made in confidence for the express purpose of securing legal advice. *SEC v. Gulf & Western Indus., Inc.*, 518 F. Supp. 675, 681-82 (D.D.C. 1981) More specifically, the privilege applies where:

(1)      the asserted holder of the privilege is or sought to become a client;

(2)      the person to who the communication was made (a) is a member of the bar of a court or his subordinate, and (b) in connection with this communication is acting as a lawyer;

(3)     the communication relates to fact of which the attorney was informed (a) by his client (b) without the presence of strangers © for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4)     the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). Federal courts have extended the attorney-client privilege to protect communications from an attorney to his client when the communications are based on confidential information provided by the client. *Mead Data Center, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). Communications from an attorney to his client are not protected however when an attorney conveys to his client "facts acquired from other persons or sources . . . ." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (citation omitted.)

The burden of presenting sufficient facts to establish the privilege rests with the party claiming it. *Id*. The party may accomplish this by presenting affidavits or similarly competent evidence "supporting each of the essential elements necessary to sustain a claim of privilege." *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000)( citing *Alexander v. FBI*, 186 F.R.D. 102, 107 (D.D.C. 1998)).

The Supreme Court has "recognized a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 237-38 (1975). The purpose of this privilege is to ensure that lawyers work with a "degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The burden of demonstrating that materials were prepared in anticipation of litigation is on the party asserting the privilege and such burden "entails a showing that the documents were prepared for litigation, and not for some other

reason." *Alexander v. Federal Bureau of Investigation*, 192 F.R.D. 42, 46 (D.D.C. 2000). In

order to meet this standard, a lawyer must have had "a subjective belief that litigation was a real

possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d

881, 884 (D.C. Cir. 1998).

### III. Analysis

According to Menendez, MWM was asked to conduct an investigation "concerning

allegations of sexual harassment and other wrongdoing by USSEC employees." (Motion at 5.)

*See also* Motion, Exh. B [Menendez Declaration] ¶3 (stating that "[t]he Internal Investigation

was conducted at my client's request for the purpose of providing legal advice to my client.")[3]

Menendez further asserts that witness interviews were conducted for the purpose of assessing

USSEC's potential legal liability and in order to provide advice and counsel to USSEC."

(Motion at 5.) At the hearing in open court on this Motion, this Court requested that Non-Party

Menendez submit a copy of the MWM Internal Investigation Report (hereinafter, the "Report")

and documents relevant to the MWM investigation, including attorney handwritten notes, so that

this Court could conduct an *in camera* review to determine the applicability of attorney-client

privilege and work product protection, applying the legal standards set forth herein. The Court

also requested that Menendez provide a declaration from USSEC confirming that USSEC is

---

[3]The Court finds this statement to be self-serving. In filing his Motion, Menendez did not provide a declaration from USSEC [the client] as to the purpose of the investigation nor did he provide any written confirmation of the same. Menendez later provided a Declaration by Terry Ecker ("Ecker"), current director of USSEC, dated March 7, 2010, and the June 6, 2008 Minutes from the Executive Session [attached to Ecker Declaration at Exh. A and produced to Defendant]. The Minutes indicate that legal counsel was asked to "investigate allegations about USSEC CEO Dan Duran including mismanagement and sexual harassment that is creating a hostile work environment." (June 6, 2008 Minutes, Executive Session.) Ecker's Declaration states that the Minutes accurately reflect what happened at the Executive Session.

asserting its attorney-client privilege, through counsel.[4]

## A. Document Production

This Court has completed its *in camera* review of documents produced by Menendez and made its determination as to whether attorney-client privilege and/or work product protection should bar production of these documents. In this case, USSEC, the party holding the attorney-client privilege, is not a party to the underlying litigation nor has Menendez asserted that USSEC will be prejudiced by the disclosure of information pertaining to the MWM investigation, except insofar as such disclosure involves statements made by USSEC employees who spoke to MWM with the promise of confidentiality, and legal advice relating to any potential liability by USSEC. The Court finds that Menendez's concerns about preserving the confidentiality of witness statements in connection with the MWM investigation and Report are addressed by requiring the parties to execute a confidentiality order whereby the information disclosed shall be disseminated only to certain persons and/or may only be used for purposes of this litigation. Furthermore, USSEC's interest in preserving the confidentiality of legal advice is accomplished through withholding information deemed by this Court to be attorney-client privileged and/or work product protected, including the "conclusion" and "recommendation" subsections in the Report [which are Attorney-Client Privileged ("AC") and protected by the Work Product doctrine ("WP")]; Section VI of the Report [which is not responsive to the subpoena] and Section VII of the Report [AC and WP]; Salisbury's notes from the USSEC Executive Committee conference call [AC and WP]; PowerPoint slides [AC and WP]; a memorandum from Salisbury to MWM partner Wayne Watkinson [WP]; and handwritten notes by attorneys Menendez, Salisbury and

---

[4]This Declaration has been submitted to the Court with the *in camera* documents.

Kidder [WP].[5]

This Court has determined that Menendez's claim of attorney-client privilege is overly

broad with regard to the remaining portions of the Report, which should be produced. *See Fisher*

*v. United States,* 425 U.S. 391, 403 (1976) (citations omitted) (While the attorney-client privilege

extends to all situations in which counsel is sought on a legal matter, it protects "only those

disclosures necessary to obtain informed legal advice which might not have been made absent the

privilege.") *See also Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C.Cir. 1980) ("[W]hen the

attorney communicates to the client, the privilege applies only if the communication 'is based on

confidential information provided by the client.'") (quoting *Mead Data Cent., Inc. v. Dep't of Air*

*Force*, 566 F.2d 242, 254 (D.C. Cir. 1977)).

Nor has Menendez demonstrated that the remaining portions of the Report [specifically,

witness interviews, a discussion of the manner in which the investigation proceeded and

background information about sexual harassment and hostile work environment] are protected

work product. The Court notes that this Circuit has recognized that "the principles underlying

the work-product doctrine should not encompass all attorney memoranda of interviews,. . . ." *In*

*re HealthSouth Corp. Securities Litig.*, 250 F.R.D. 8, 11 (2008) (citing *In re Sealed Case*, 124

F.3d 230, 236 (D.C. Cir. 1997), *rev'd on other grounds*, 524 U.S. 399 (1998)). Applying the *In*

*re Sealed Case* decision, the District Court distinguished between fact work product and opinion

work product in witness interviews. *See also Director, Office of Thrift Supervision v. Vinson &*

_____

[5]Christopher Salisbury is a MWM associate who has also been subpoenaed to appear for
deposition and to produce documents. His motion to quash the subpoena is pending before
United States District Court Judge Gladys Kessler in this Court. Elisabeth Kidder is an attorney
with MWM and counsel of record for Menendez.

*Elkins*, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997) (where the D.C. Circuit rejected the notion that a lawyer's interview notes are always opinion work product and found that "purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions.") Upon review of the documents submitted *in camera*, this Court has determined that the witness interview statements set forth in the Report are distinguishable from the attorney's handwritten notes of witness interviews, insofar as the statements in the Report are factual recitations of witness interviews while the notes contain attorneys' thoughts and comments.

Another consideration in favor of production of the remaining portions of the Report is that not all documents generated from an internal investigation are protected by the work product doctrine simply because an organizations' internal investigation coexists with a present or anticipated lawsuit. Documents that would have been created in the ordinary course of business irrespective of litigation are not protected by the work product doctrine. *Long v. Anderson University*, 204 F.R.D. 129, 136 (S.D. Ind. 2001). In *Long*, a former student [and his parent] sued the student's former university and some of its employees for alleged civil rights violations and common law torts. Plaintiffs moved to compel the production of documents relating to an internal investigation of the student's sexual harassment claims but the university claimed work product protection, asserting that these documents were prepared in anticipation of and for the sole purpose of litigation. The *Long* court ruled that the former student could obtain these documents relating to the internal investigation because the university had a harassment policy and the investigation may have been undertaken for [business] purposes of ascertaining compliance with that policy.

In this case, there is no discussion of USSEC policy on harassment but the record reflects

that the Executive Committee of USSEC authorized an investigation into claims against its CEO

not only  to obtain legal advice relating to USSEC's potential legal liability but also to aid in

their determination as to whether Daniel Duran should continue serving as the CEO [a business

purpose].  The investigation was also conceivably undertaken to address soybean industry

concerns relating to allegations of mismanagement by Duran.[6]

Even assuming *arguendo* that the remaining portions of the Report were deemed to be

privileged or protected, there are a number of additional grounds supporting production of those

portions of the Report. For example, there is an ongoing dispute between the parties as to

whether litigation was reasonably "anticipated" by USSEC.  Menendez asserts that USSEC asked

him to "review a matter that the client feared could lead to litigation - specifically, allegations of

sexual harassment and other wrongdoing by USSEC employees."  (Reply at 8.)  He further

elaborates that the "documents were prepared because of the possibility of a lawsuit by the

*accused employees*, and also in anticipation of a potential suit brought by the *alleged victim of*

*the harassment*." (*Id.*)(emphasis added).  A review of the record before this Court indicates that

Nishio's allegation was not an allegation of sexual harassment or hostile workplace but rather an

allegation pertaining to an improper relationship between Duran and one of Mr. Nishio's

employees.  Furthermore, there is nothing in the record to suggest that USSEC was anticipating

---

[6]The June 6, 2008 Minutes of the Executive Session reflect that a motion was made to
place Duran on immediate leave but it failed; those Minutes further reference allegations of
"mismanagement."  According to Andrew, the Report was later attached to a December 10, 2008
petition filed with the Secretary of Agriculture by the American Soybean Association requesting
a full OIG audit and investigation into the allegations against Duran and MWM's investigation of
the same. (Opposition at 13.)  Duran was placed on administrative leave in March 2009.
(Opposition at 15.)

litigation by Duran, the aforementioned "accused employee."[7]

The purpose of the rule establishing the work product doctrine is to create a zone of privacy for strategic litigation planning to prevent one party from piggybacking on the adversary's preparation. *United States v. Adlman*, 68 F.3d 1495 (2nd Cir. 1995). Here the work product is a report of an investigation undertaken by a non-party into allegations made against its former CEO. It does not contain any legal theories or litigation strategy of USSEC's attorney in preparation of the ongoing litigation between Plaintiff and Defendant.

There is no dispute between the parties that the investigation performed by MWM and the resulting Report, which led to the issuance of several press releases disputing the truth of the allegations made against Mr. Duran are relevant to Duran's underlying civil action for defamation. Work product protection is not absolute; it may be rebutted if the party seeking production demonstrates a substantial need for the materials and that it would suffer hardship in procuring the information some other way. *Long*, 204 F.R.D. 129, 136.

> Work product that contains only non-privileged facts must be produced if the party seeking discovery satisfies certain conditions justifying production. Fed. R. Civ. P. 26(b)(3) defines those conditions as: 1. a "substantial need" for the factual information contained in the document, and 2. an inability to collect that same factual information or its "substantial equivalent" without "undue hardship."

*Washington Bancorp v. Said,* 145 F.R.D. 274, 276 (D.D.C. 1992) (internal citation omitted.)[8]

Menendez also argues in his Motion that Andrew could have obtained some of the requested information by deposing certain USSEC employees. This Court is not in a position to determine

---

[7]Nothing in the record before this Court suggests that MWM was asked to investigate allegations against anyone other than Duran.

[8]"Even if the party seeking discovery meets those two conditions, Rule 26(b)(3) requires the court ordering discovery to ensure that redactions protect any opinions also present in the fact-filled document." 145 F.R.D. at 276. Redactions have already been suggested in this case.

whether or not Andrew was delinquent in conducting depositions or interviewing witnesses since

the underlying civil action is pending in another District Court. Counsel for Andrew did note that

two of the persons interviewed by MWM reside in Japan and one is no longer employed by

USSEC, and further, that Duran and his wife refused to answer certain questions during their

depositions. Counsel did not however indicate that Andrew had exhausted all of his depositions.

Examining Andrew's "substantial need" for the Report and the "undue hardship" in

collecting the information in that Report, this Court notes that Mr. Duran uses the Internal

Investigation Report as a sword, for purposes of "proof" that Andrew's statements were

defamatory; namely, Duran relies on USSEC's publicized "conclusion" that it undertook an

investigation and determined the allegations against Duran to be untrue by attaching a copy of the

USSEC press release to his Complaint.[9] *Cf. In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 ,

470 (S.D.N.Y. 1996) ("Even if the privilege holder does not attempt to make use of the

privileged communication, he may waive the privilege if he makes factual assertions the truth of

which can only be assessed by examination of the privileged communication.") It seems

appropriate that Andrew may have a substantial need to access those portions of the Report that

MWM relied upon in making its determination that the allegations against Duran were without

substance.[10] Redacting MWM's recommendations and conclusions protects the work product of

---

[9]The press release by the Chairman of USSEC indicates that "[t]he investigation [by USSEC by MWM] yielded no findings to substantiate the allegations brought to the attention of the Board by [certain] individuals, which leaves no doubt that they were [sic] without substance or support." (Andrew Declaration, Exh.H.])

[10]While it is unclear if Andrew could have interviewed or deposed witnesses such as Mark Pietz, Miguel Escobar and Rick Ostlie without "undue burden," but the Court notes that the information that is relevant to MWM's findings that resulted in the press releases is the information that was conveyed by these persons to MWM *during* the course of its investigation.

attorney's opinions and legal advice.

If this Court upholds USSEC's claim of attorney-client privilege and work product protection to thwart Andrew's access to the Report, this prevents Andrew from determining the adequacy of the investigation and the reasons why USSEC concluded that the allegations against Duran were "without substance or support." (Exh. H.) Duran is thus permitted to use the Report as a shield against the disclosure of any information that could aid Andrew's defense against the defamation claims, particularly where it has been represented to this Court that Mr. Duran has refused to answer questions about the USSEC investigation during his deposition. Furthermore, while it has been represented that Duran was not privy to the entire Internal Investigation Report, he was actively employed by USSEC, as its CEO, during the time that the investigation was conducted [June-July 2008], the Report was completed [July of 2008] and several press releases were issued by USSEC [August of 2008, January of 2009], declaring the allegations to be untrue. Duran was not present at the hearing on the Motion and this Court was thus unable to ascertain whether or not Duran had reviewed the entire Report although he was certainly in a position to do so.[11] However during the deposition of Mr. Duran's wife, on October 29, 2009, she testified that she had read the document prepared by MWM in its entirety. (Janeen Duran Deposition at p 42, lines 3-22; p 43, lines 18-24; p 44, lines 1-2.)[12]

---

[11]In the event that Duran obtained a copy of the report or even reviewed the report, this would allow him to utilize that information in the preparation of his case against Andrew, which would give him an unfair advantage.

[12]The testimony of Mrs. Duran at her deposition strongly suggests that Mrs. Duran read a report. Plaintiff's attorney acknowledged and stipulated that the report read by Mrs. Duran was the MWM investigative report prepared for USSEC. (Duran Deposition at p 42, lines 13-24;p. 44, lines 3-23.) *See generally GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1275 (Fed. Cir. 2001), *cert. denied*, 537 U.S. 1046 (2002) (Disclosure of a privileged communication generally waives the privilege over other communications of the same subject matter.)

Taking into account all the information before this Court and in light of the fact that the

trial court in this case will be the final arbiter as to what evidence is presented at trial, this Court

finds that portions of the Report containing witness interviews and background information

should be provided to Andrew. The remaining portions of the Report may be redacted as noted

herein and the other documents presented *in camera* may be withheld.

Menendez Deposition

Menendez asserts the applicability of the attorney-client privilege and work product

protection to bar his deposition testimony. *See Amobi v. District of Columbia Dep't of

Corrections*, 262 F.R.D. 45, 50 (D.D.C. 2009) ("To grant the motion to quash and the protective

order, [the Court] would have to find that 'there is not a single question that could be propounded

to [the attorney-advisor] that would not be objectionable because it would disclose a confidential

communication between attorney and client or attorney work product.'") (citing *Sanders v. Dist.

of Columbia*, No. 06-CV-1411, 2009 WL 481683, at *4 (D.D.C. Feb. 25, 2009) (commenting

that no witness can claim immunity as to facts)). *See generally Harding v. Dana Transport, Inc.*,

914 F. Supp. 1084, 1089 (D.N.J. 1996) (finding no general prohibition against taking the

deposition of adverse counsel regarding relevant, nonprivileged information, particularly where

counsel's conduct is the basis of a claim or defense.)

In *Harding*, several female employees brought a lawsuit alleging sexual harassment

against their former employer and one supervisor. The employer moved for a protective order to

prevent or limit the deposition of counsel who conducted the investigation into sexual

harassment claims after complaints were filed with the appropriate state agency. In that case, the

employer made the adequacy of the investigation an issue in the case by using it as an affirmative

defense; namely, the employer asserted that it investigated Plaintiffs' complaints and found no support. This Court finds it conceivable that Andrew may want to question Menendez about the content and adequacy of the MWM investigation particularly in light of Duran's reliance upon the investigation "yield[ing] no findings to substantiate the allegations brought to the attention of the Board by [certain] individuals, . . . leav[ing] no doubt that they were [sic] without substance or support." (Opposition , Exh. H.) This does not preclude Menendez from objecting to questions propounded by Andrew where the answers to such questions would require disclosure of legal advice and in fact, the Court anticipates that there will be questions that call for information that is privileged. Counsel for Andrew should make every effort to avoid these subject areas and if questions arise during the course of the deposition, counsel may consult with this Court. Accordingly, the deposition should be scheduled for a time and place that are mutually convenient.

DATED: April 5, 2010                          _____/s/_____
                                                          ALAN KAY
                                                          UNITED STATES MAGISTRATE JUDGE